IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICKEY DON BUTLER #2021882 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv347 |
| BRYAN COLLIER, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Mickey Don Butler filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights as a prisoner in the Texas Department of Criminal Justice (TDCJ). The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by the two remaining Defendants, Ogunjobi and Evans, seeking summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Dkt. #27.) The time within which Plaintiff could have filed a timely response to the motion has expired, and the motion is ripe for review. For the reasons explained below, the undersigned recommends that the motion be granted and that summary judgment be entered in favor of Defendants.

**I. Plaintiff's Allegations**

Plaintiff alleges that Defendants assaulted him on September 18, 2021, in the Michael Unit of the TDCJ. Specifically, he states that although he had a medical pass not to be cuffed behind his back with short cuffs, Defendant Ogunjobi forced his arms behind his back and injured his shoulder. (Dkt. #1 at 4.) Another officer involved in the incident, presumably Defendant Evans, choked Plaintiff by pressing a knee into Plaintiff's neck while striking him in the head. (*Id*.) Plaintiff seeks unspecified money damages.

**II. The Defendants' Motion**

Defendants assert that TDCJ has a 2-step grievance process to resolve issues relating to conditions, which they describe as follows:

> TDCJ's inmate grievance procedure provides inmates with an administrative remedy to resolve issues that occur incident to incarceration. *See* TDCJ's Offender Orientation Handbook, pp.73–75.2 First, an offender must file a Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, and it must be filed within fifteen days of the alleged incident or challenged event. *Id.* "Grievance forms are available from the law library, housing area, shift supervisors, or by contacting the unit grievance office." *Id.* at 73. Once an inmate receives a response to his Step 1 grievance, he then has fifteen days to file a Step 2 grievance to appeal the unit-level response to the state level. Id.

(Dkt. #27 at 3.)

Defendants further assert that Plaintiff failed to exhaust that grievance process with respect to the use of force incident described in his complaint. (*Id*. at 9.) Specifically, they state that

> On October 5, 2021, Plaintiff dated a Step 1 grievance regarding the [September 18] incident. ECF No. 1-2 at 6-7. The office of the Unit Grievance Investigator returned the Step 1 grievance unprocessed with the stated reason that the Plaintiff failed to timely grieve the September 18, 2021 incident. ECF No. 1-2 at 7; Exhibit A at MSJ-5.

(*Id*. at 3.)

Attached to Defendants' motion is the affidavit of Jessica Riley, the custodian of records for the TDCJ's Inmate Grievance Department. (Dkt. #27-1 at 2.) She attests that grievance records attached to her affidavit constitute all grievances submitted by Plaintiff from March 1, 2021, through March 1, 2022, with two exceptions, discussed below. (*Id.*) The records attached to the Riley affidavit include a Step 1 grievance signed by Plaintiff on October 5, 2021, and stamped received by grievance officials on October 7, 2021, in which he complains about the September 18 use of force. (Dkt. #27-1 at 5–6.) This grievance was assigned number 2022014941 and returned to Plaintiff on October 7, 2021, marked "[g]rievable time period has expired." (*Id.* at 6.) In another

Step 1 grievance stamped received on November 12, 2021, and numbered 2022028901, Plaintiff again mentioned the use of force in the context of complaining about a disciplinary proceeding against him. (Dkt #27-1 at 9–10.) There is no Step 2 appeal from either of those grievances, and none of Plaintiff's other grievances address the September 18, 2021 use of force.

Regarding the exceptions to the completeness of the grievance records attached to Riley's affidavit, she explains that "Our records indicate that inmate Mickey Butler did file Step 1 grievance #2022026800 & #2022010961 relating to 499 & 899 respectively; however, the file copy of these grievances cannot be found in the unit files or our imaging system." (*Id.*) In response to the Court's order to clarify the meaning of that reference, Defendants filed the declaration of Tyra Phillips, the Program Supervisor who oversees all Unit Grievance Investigators in the TDCJ. (Dkt. ##31, 33.) Phillips explains that "499" is a code assigned to unprocessed grievances about a disciplinary case, and "899" is a code assigned to unprocessed grievances about staff. (Dkt #33 at 2.) With regard to the two unscanned grievances submitted by Plaintiff, she states that:

> In my review of Inmate Butler's grievance records, the unit grievance investigator failed to digitally scan Grievance Numbers 202201961 and 2022026800. But in my review of the Offender Grievance Case Tracking System for Grievance Numbers 202201961 and 2022026800, *See* Attachment C, I can determine the subject of the grievances and that each of these grievances were screened and returned unprocessed for failing to follow TDCJ Grievance procedures.
>
> Grievance Number 202201961 was screened because Inmate Butler made an inappropriate request. It was assigned the issue code 899. The reason for screening was given as 11, or an inappropriate request. Based on the subject line, it appears that the unit grievance investigator found this to be an inappropriate request because the Plaintiff wanted "Lt. [Evans] Gone." Inmate Butler could have resubmitted this grievance if he removed his request for the employee to be fired. The outcome code was listed as H, further indicating this grievance was returned unprocessed.
>
> Grievance Number 2022026800 was screened and returned unprocessed for presenting an issue not grievable. It was assigned the issue code 499. The reason for screening was given as 8, or a grievance presenting a non-grievable issue. Based on the subject line and code, it appears that the Unit Grievance Investigator returned the grievance unprocessed because Inmate Butler complained about a disciplinary case that had yet to have a hearing. If the disciplinary case was not dropped and the

3

> inmate was convicted at a hearing, then Inmate Butler could have submitted a Step 1 grievance about the disciplinary case. The outcome code was listed as H further indicating this grievance was returned unprocessed.

(Dkt. #33 at 2–3.)

Attached to the Phillips declaration are the authenticated electronic records of the screenings of those two grievances. They indicate that Grievance Number 202201961 was received and screened on September 28, 2021, concerning an incident that occurred with Lt. Evans on September 18, 2021. (Dkt. #33-3 at 3.) The substance of the grievance is summarized as "TK HS ID CRD. LCKD HM UP. NO RSN. WNTS RLSD TO GP AND LT 'GONE,'" which the Court understands to mean that Plaintiff complained that Defendant Evans took his ID card and locked him up for no reason and that Plaintiff sought release to general population and Evans's termination. (*Id.*) The second unscanned grievance, Grievance Number 2022026800, received and screened on November 8, 2021, concerned a "DISC[IPLINARY] CASE" that had "NOT RAN YET." (*Id.* at 4.)

Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

**III. Legal Standards**

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-*

*Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his

administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

The evidence submitted by Defendants clearly establishes that Plaintiff failed to comply with that requirement. It appears that Plaintiff submitted an initial grievance that mentioned the alleged use of force, which was untimely pursuant to the relevant TDCJ rules, and which was not appealed through any higher channels. He also mentioned the use of force in a much later grievance primarily devoted to his disciplinary conviction, but he also failed to appeal the denial of that grievance. And Defendants' supplemental filing establishes that Plaintiff's other potentially related grievances were improper under TDCJ rules and that, although they might have arisen from the September 18 incident, they did not mention any improper use of force. Defendants have

carried their burden of demonstrating that there is no genuine issue of fact concerning whether Plaintiff exhausted his administrative remedies. And Plaintiff has not responded to Defendants' motion or otherwise contested this point.

Accordingly, Section 1997e requires dismissal of this action, and Defendants are entitled to summary judgment.

## RECOMMENDATION

For the reasons explained above, the undersigned recommends that Defendant's motion for summary judgment (Dkt. #27) be **GRANTED.** Plaintiff's claims should be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 10th day of July, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE